Good morning and welcome to the Ninth Circuit. We have two cases on the calendar that are listed for submission on the briefs. Those are 21-16833, Patrick Shin v. United States, and 22-10151, United States v. Gabriel Ruiz Salcedo. In accordance with the respective orders entered in the dockets of those cases, those cases are hereby submitted on the briefs at this time. So we'll proceed to hear argument in the first of the three cases on calendar for argument. The first one is 20-70457, Sainan Liu v. Merrick Garland, and we'll hear first from Mr. Zha. You may proceed whenever you're ready. Good morning, Your Honors. May it please the Court, Ryan Azad for petitioner Sainan Liu. I'll aim to reserve two minutes for rebuttal. This Court has said over and over again that the agency may not rely on speculation and conjecture to form an adverse credibility determination, nor may it ignore relevant record evidence that bears on an applicant's claims for relief. Yet both of these errors infect the BIA and IJ's denial here of Ms. Liu's application for asylum, withholding of removal, and protection under the Convention. Mr. Azad, did you represent the alien at the IJ hearing? I did not, Your Honor. I've been retained. All right. Perhaps you're going to help me here. It seems to me that, as I read it, on October 13, 2016, counsel for the alien asked for a continuance in order to procure corroborative evidence. What corroborative evidence did she seek to procure? Well, Your Honor, we don't—I'm not sure what she sought to procure at that continuance. No, no, no. I'm not asking for her unexpressed thoughts. I'm asking for what her counsel said in support of the motion to continue to provide corroborative evidence. Please tell me what corroborative evidence she sought to produce. I believe that evidence, Your Honor, is the corroborative evidence she submitted in support of her application. And what facts did that have to do with? So, at page 304 of the record, Your Honor, for example, Ms. Liu submitted a letter from her former classmate, Meijian Liu, and that letter states that Ms. Liu was expelled by No. 3 High School in Weha City for participating in house church, and that her former classmate didn't see her after then. That corroborative evidence supported Ms. Liu's testimony that, following her arrest by the Chinese government, she was expelled from high school. Next question. Yes. Was there anything stated factually in the motion to continue as to what corroborative evidence she sought to produce, which was not produced on the hearing? I don't believe so, Your Honor. I'm happy to look further into that and submit a letter to the court after argument if it would be helpful, but I don't believe the motion stated which type of corroborating evidence Ms. Liu would seek. It was just a general motion saying, I need time to provide corroborative evidence, dot dot dot, without saying anything as to what that evidence was. I believe so, Your Honor. And if I may continue the answer to your first question, Judge Bea, there was more corroborative evidence that Ms. Liu submitted. So, she submitted medical records that showed that she sustained injuries following her arrest that were consistent with her testimony. Here, the BIA and IJ simply disregarded that evidence as having low probative value merely because it was submitted shortly before Ms. Liu's hearing. But that finding, as with the BIA and IJ's other findings, relied solely on speculation and conjecture. The agency didn't point to a single piece of evidence in the record that supported the diminished weight granted to the document. And, in fact, Ms. Liu submitted a letter from her mother at AR-297, and the mother's letter corroborated Ms. Liu's telling for why that evidence was submitted when it was. Namely, the fact that Ms. Liu asked her mother to look for the medical records shortly after she submitted her application for relief. The mother was busy taking care of her own sick mother and didn't have time to search until she found those records shortly before Ms. Liu's individual hearing and then sent them over. You know, here's one question I have about this case. When you're raising a claim about prospective future mistreatment by the government if you're returned, there's two boxes you can put that in. One is the Convention Against Torture, which has a much higher standard for the mistreatment and a much higher standard for the probability. The other is asylum, which has a much lower standard for what counts as persecution and a much lower 10% standard for the likelihood. You seem to raise the first one in your opening brief but not the second, and that seems inexplicable to me, unless you view them as subsumed. Because what you have in your brief is the adverse credibility determination, and then you have torture convention, and not really the torture convention with the asylum folded into it. And I'm just wondering whether that stands or falls just on the credibility determination or whether you are making a similar alternative argument to the torture convention on asylum that's independent of the credibility determination. Do you understand my question? I think so, Your Honor. And apologies if that didn't come clearly. So we believe we're making separate arguments for Ms. Liu's asylum claim and her cat killing. The cat argument appears in pages 40 to 50 of our opening brief. Right. And that's based on the fact that even if you find her not credible, if you send her back because you found credibly that she is currently a Christian, she'll suffer torture. But there's a similar argument for asylum that now that you believe that she is a Christian now and you send her back, and are you making that claim in addition to the torture claim? That's what I'm trying to understand. We are, Your Honor. But our principal arguments in why the BIA and IJ erred in denying Ms. Liu's application for asylum is the adverse credibility determination was not based on substantial evidence, as this court's case law requires. This court has said over and over again in cases such as Ga, Ai Zhengji, and Leilan that speculation and conjecture does not form the basis of an adverse credibility determination. I understand that. But that's a very tough standard of review. But the IJ did find her credible. She didn't find that she's a fake Christian today, that this is all just a kind of a con to get into the country. She found her credible with respect to her current belief, which then raises the question that even if she wasn't credible about the past treatment, given that she's now a Christian, if you send her back, is she going to be mistreated? Is that to be evaluated by us only in the torture box, or is it also to be torture and subsumed within that, the asylum box? You're right, Judge Collins, that this court may grant and reverse the agency solely on the ground that Ms. Liu would be subject to future torture, or I'm sorry, future persecution if returned to China. We make these separate and distinct arguments that because she suffered past persecution in China, and because there is sufficient evidence in the record to support that, that she is then entitled to the rebuttable presumption of future persecution, and the government below did not introduce any evidence that would overcome that rebuttable presumption. I see I have a few minutes remaining, but I just want to focus specifically on – Can you address the Kat claim? This isn't to minimize the harm that she alleges, that she got slapped and hit on the arm doesn't amount to torture. In fact, even in withholding claims, we said that doesn't amount to persecution. So what's different here that would compel that there's torture here? Sure, Your Honor. So Ms. Liu testified, as you stated, that she was arrested, slapped in the face a couple of times, beaten 10-plus times with a baton, and had her back heated. This court's case law, we think, as the cases we cited in our opening brief and reply brief make clear, has said that that conduct constitutes torture. But there is a second layer to the analysis, which is under this court's decision in Hernandez-Ortiz, the fact finder is required to evaluate injuries to an applicant from the perspective of the applicant herself. And in this case, Ms. Liu was a minor. At the time she sustained these injuries, she was, as a result, expelled from high school, couldn't get into any other high school in China, and testified that she never again could attend church in China because of the officer's threats. Could there be a sliding scale, or is the IJ allowed to have a sliding scale in terms of the age? Because I think that Hernandez-Ortiz was, the petitioner was, I forget, 8 or 9 years old. Here she was 16. So are they allowed to take into account she's on the older end of the spectrum? That's right, Your Honor. So, yes, Ms. Liu was older than the petitioners in Hernandez-Ortiz. I do think there should be a consideration of how old the applicant was, but I would urge this court to, as it said in Hernandez-Ortiz, consider the injuries from the perspective of the applicants. And here, the fact that Ms. Liu was age 16 versus, say, age 8, didn't seem to affect the severity of the torture that was inflicted upon her. Again, she could never attend church again. She was expelled from high school as a high school freshman after she scored in the top  That is a traumatic injury on any minor, let alone someone like Ms. Liu, who suffered the humiliation of being arrested by the Chinese government, detained for four days, and tortured. I'll reserve the balance of my time with this court's permission. I'll give you two minutes, because we asked a lot of questions. Thank you, Your Honor. All right, we'll hear now from Mr. Leist, or Leist? Jeffrey Leist. Leist, okay, all right. May it please the court, Jeffrey Leist, appearing on behalf of the Attorney General. Substantial evidence supports the agency's denial of the petitioner's applications for asylum, withholding of removal, and torture protection. Could you answer the question I asked Mr. Azar? What specific evidence of corroboration did Ms. Liu say she was going to get and didn't get? My recollection is the same as opposing counsel's. I don't remember there being a specific piece of evidence or type of evidence, so I don't actually know if that was reference or if it was just me. Thank you. You may answer my question. Here, the agency found the petitioner failed to put forth a credible claim for asylum, withholding of removal, and torture protection. This court looks at the totality of the circumstances, not just any individual finding about the immigration, but whether the record as a whole supports the agency's determination that someone did not testify credibly. The record has to compel the conclusion that no reasonable fact finder could have found the petitioner to be not credible in this case, and that standard has not been met. Here, there were several bases for the immigration judge's decision. There was implausibilities regarding her claim. There was also issues with evidence that was not submitted and evidence that was submitted. As far as the implausibilities, the immigration judge asked the petitioner questions about whether her parents were involved with her education and with her other activities, and she said that they just weren't interested. The immigration judge found this to be implausible, given the fact that they were also providing a great deal of financial resources towards her English lessons. The immigration judge also found it to be implausible that the petitioner's mother would have no opportunity to look for this evidence for years before finally submitting it right on the eve of her death. I don't find any of those – I mean, it seems speculation. They don't seem implausible at all. I mean, it maybe took her mom a long time to provide the documents, but we've had cases plenty of times where we have lawyers, and they just run out the discovery period. At the very end, they're serving discovery. They probably should have done it earlier, but, you know, that happens. And it seems like here, maybe the mom didn't provide the documents until the very end before the hearings. I don't find that implausible. Well, the board found that it wasn't impossible, but they agreed with the immigration judge that it was implausible. So – And the other one I don't find implausible about the money for the education. You know, even if her father didn't earn a lot of money, they could have squirreled away a lot of money. We even hear stories here in the United States where someone's maybe a waitress or someone doesn't make that much money, but at the end, she squirreled away or he squirreled away a lot of money. At the end, has amassed a lot of mini fortunes. So to me, it's not implausible that someone may not make a lot of money, but saved enough money, and they used it for her education. Well, I mean, the immigration judge did find that it was implausible, and the board did agree. But there are other reasons that, under the totality of the circumstances, support the average credibility determination. Do you think one of those reasons is the sort of superannuated household registration card? That is one of the reasons, Your Honor. Why – it wasn't a false registration card. It wasn't forgery, was it? It was just an old one. Well, it was a new one that had been gotten between the petitioner's first hearing and the new hearing with the new immigration judge. So, it contained admittedly incorrect information. It was old information, but it wasn't incorrect information, was it? It would have been correct at one point in time, but the agency found that because it was something that the petitioner had submitted in support of her case, the fact that it contained incorrect information, it called into question the validity of that information. So you're saying that Ms. Liu said that this information is correct as of now, even though she knew it was superannuated? She submitted it, I believe, to establish identity or familiar relationship. I don't recall if she said anything about – Right. So, she submitted an old household registration card. But it wasn't – it was a new one that contained the old information. Was it just that the information was old, or did the information not line up as correct at any time period? I believe that it said that she was a preschooler and that her sister was in junior high. And was there a point in time where that would have been the case for those two? I don't recall the exact ages, but I'm assuming that at some point in time that may have been correct. There was also an issue with the medical documentation that was submitted. It didn't actually corroborate her claim. There's a long history of having similar injuries, and in fact, there's an identical entry to this March 6, 2012 document dated August 6, 2011. So, there's two documents, different dates, the exact same language on them. There was also the fact that the petitioner was – Could you repeat that? I didn't quite catch your point. Sure. So, there's – she submitted these medical documents. The document that purports to be from the incident that prompted her coming to the United States was, I believe, March 6, 2012. It has a whole list of things that a certain doctor said at a certain hospital, certain injuries and things like that. The exact same document is in the record about seven pages earlier, dated August 6, 2011. Same language, same doctor, same everything else. So, that certainly goes toward the credibility of the applicant. And then there was also the issue of the school records. At the petitioner's initial hearing, the immigration judge expressly said that he was going to need documents from China regarding, you know, school records from China. That was not submitted to the agency at any point in time. So, that was one other basis for the agency's determination. Can I ask about the – following up on the question I asked opposing counsel, which is if we view the torture convention, future torture based on being a current Christian independent of the credibility determination, if we view that as subsuming also the sort of piggyback to asylum claim, the same theory but with the lesser standards, it seems like the BIA's rationale for rejecting the future asylum claim was just clearly wrong because the court – the BIA said – upheld the credibility determination and then said because we agree with the threshold determination that the respondent did not present credible testimony or sufficient evidence to otherwise meet her burden of proof, we need not reach the immigration judge's alternative analyses, which is then the discussion of future persecution based on her, admittedly, being a Christian. That wasn't correct because they're not – it's not an alternative analysis for the same conclusion. It's a separate theory for getting relief and so it couldn't be brushed aside. So, am I overlooking something here? That's a good question, Your Honor. That's not something I had considered before now because, I mean, the Board oftentimes does what they did here where once they affirm an average credibility determination, they'll just kind of decline to address the alternative merits determination. Actually, usually you see the opposite. They recognize that there's always a piece where even though they were a liar about what happened in the past, I still need to look at the future. And we see lots of – and this one didn't follow that familiar pattern. It did it seemingly wrong on its face. So, I mean, a credibility determination can go towards both past and future, but as far as there being an independent basis on her being a Christian in the United States, I would have to go back and check and see what the immigration judge had said on that because the Board, as you pointed out, declined to address that. And whatever the immigration judge said, that needed to be reviewed for clear error by the Board. We can't even apply clear error. We have to apply a much higher standard to fact-finding. But part of the rationale for that is that the Board's going to review it for clear error, and they just seem to have fallen down on that, and maybe it just needs to go back for them to do that. I can certainly look into that and see what that is. But yes, Your Honor, if the Board flat-out overlooked something that they should have addressed, then that would be a basis for the Court to remand on that issue. As far as the torture convention, I think Judge Lee pointed out that this Court has routinely found that the harm that the petitioner suffered here does not rise to the level of torture. As far as a well-founded, excuse me, a clear probability of future torture, the agency's substantial evidence supports the agency's determination that the petitioner failed to demonstrate that it was more likely than not that she would face torture. The country conditions evidence, while it reflects poor conditions for Christians in China, does not show any individualized risk to the petitioner herself. Can you address opposing counsel's argument that she was a minor and that had to be considered? I believe the immigration judge did reference her age in his decision, and I think that your point about there being a sliding scale is that it does have to be considered, but there is a difference between someone who is a young child and someone who is a teenager. I believe we cite to an unpublished case in our brief, Theodore's, I believe it is, that distinguished Hernandez-Ortiz on that basis that a teenager is in a different position than someone who is a young child when something happens. Are there no further questions? Thank you. Thank you. We'll give you two minutes for rebuttal. Thank you, Your Honors. First, I'd like to remind this court that in Allam, this court found the single factor rule inconsistent with the Real ID Act and has said that the substantial evidence standard has to be reviewed under the totality of the evidence. And this court expressly declined to say how many inconsistencies are sufficient to affirm an adverse credibility determination. So if this court finds any of the bases for the IJ and BIA's decision to be based on speculation and conjecture or an ignorance of the evidence, it should remand, and that's consistent with this court's recent decision in Barcegayan, where this court did precisely that. And I'd like to just go through quickly and remind the court how much evidence the agency ignored here. No mention of Ms. Leo's mother's letter at AR-296, which explains why the parents hired the English tutor. He had an excellent reputation and produced incredible results in Ms. Leo. Ms. Leo testified that both her parents worked at AR-130 to 131, and yet the agency focused only on her father's income in finding that the cost of the English tutor was, in the words of the BIA, an extraordinary expense the family couldn't possibly have afforded. Ms. Leo's mother, in that same letter at AR-296, explained that she didn't attend her daughter's religious services and church services because she wasn't interested in religion, didn't like to mingle with others, and had her own sick mother to care for, and yet the agency completely disregarded that evidence in finding Ms. Leo's testimony implausible. Any of those provide grounds for this court to vacate and remand. Second, opposing counsel repeatedly referred to the decision of the IJ. The problem with that is this court is reviewing the decision of the BIA here, not the IJ. This was not a decision where the BIA affirmed and adopted a decision of the IJ as a whole, so this court is limited to the reasons explained by the BIA for the adverse credibility determination. Second, opposing counsel also made an argument about the medical records. I see my time has expired. How did I finish this point? About the medical records and there being similar records seven pages earlier in the record, that did not appear in the BIA's decision, or the IJ's for that matter. And again, I would stress that this court is bound by the reasoning and decision of the agency, not the reasons that this court came up with. Thank you, Your Honors.
judges: BEA, COLLINS, LEE